Patti J. COURTNEY, et al.,
Respondents,

v.

CITY OF KANSAS CITY, Missouri and David L. Brown, Appellants,

and

Wendy West–Gibson, Respondent.

No. WD 40910.

Missouri Court of Appeals,
Western District.

June 27, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Richard N. Ward, City Atty., Galen Beaufort, Asst. City Atty., Kansas City, for appellants.

Thomas R. Larson, Kansas City, for respondent Courtneys.

Michael J. Svetlic, Kenneth P. Eitel, Jr., Kansas City, for respondent West–Gibson.

Before KENNEDY, C.J., and TURNAGE and GAITAN, JJ.

GAITAN, Judge.

Defendants-appellants, the City of Kansas City, Missouri, and David L. Brown, appeal the trial court's order granting a new trial on motions for a new trial by plaintiffs-respondents, Patti J. and Kenneth Courtney, and defendant-respondent, Wendy West–Gibson. The jury verdict was in favor of the City and Brown. Both the Courtneys and West–Gibson filed motions for a new trial on several grounds. However, the trial court granted the motions only on the ground that the verdict was against the weight of the evidence. The Courtneys' requested a new trial on both liability and damages, while West–Gibson's request for a new trial stated that the verdict was against the weight of the evidence in that Brown "was negligent and that his negligence directly cause[d] the injuries of plaintiffs." The trial court did not specify whether the new trial was being granted on both liability and damages, or only liability.

The Order granting a new trial is affirmed and the cause is remanded with instructions.

This case arose out of a two vehicular accident which occurred on July 18, 1984. Patti Courtney was a passenger in a vehicle driven by West–Gibson that collided with a tractor with a mowing attachment operated by Brown. When the collision occurred, Brown was acting within the scope of his employment on behalf of the City of Kansas City.

The collision occurred in the inside eastbound lane of Missouri State Highway 291 in Platte County, Missouri, near that highway's interchange with I–435. The portion of Highway 291 on which the collision took place is a four-lane highway divided by concrete medians in which there were two openings. To the west of the point of collision, Highway 291 is a two-lane, undivided highway which curves to the north and east down a hill and then widens at the bottom of the hill into the four-lane divided highway. It was in the middle of the afternoon, a sunny day and the roadway was dry. When the collision occurred, West–Gibson's car was entirely within the inside eastbound lane of Highway 291 and the front portion of the tractor-mower had been turned out of the inside eastbound lane and into the second median opening at an angle, but a part of the rear portion of the tractor-mower still extended into the inside eastbound lane.

Prior to the collision, Brown had been mowing vegetation along the shoulder of the eastbound lanes of Highway 291. There were three orange signs with black lettering each stating "Mower Ahead." These signs were situated at the following locations: (1) Ferrelview approximately four to five miles back; (2) Robinhood Lane approximately one mile back; and (3) in the back of an open bed pickup parked along the shoulder of Highway 291 just east of where it widens into a divided, four-lane highway. The two rear emergency flashing lights on the pickup were flashing as West–Gibson approached and passed the truck prior to the collision. However, there were no flashing lights, signals or rear-view mirrors on the tractor-mower itself.

Brown and his field supervisor decided cutting should stop and the tractor-mower should be marked and serviced at a State Highway Department facility on the north side of divided Highway 291. Brown had stopped the tractor-mower on the shoulder off of the eastbound lanes of Highway 291 just in front of his field supervisor's truck and just east of where Highway 291 widens into a divided, four-lane highway. Brown got off the tractor-mower and walked back to the driver's side door of the truck to talk with his supervisor. Before getting back onto the tractor-mower, Brown testified that he looked back down the highway to see if there was any approaching eastbound traffic. At that time, he saw no cars approaching so he then got on the tractor-mower and started it.

After starting the tractor-mower, Brown testified that he again looked back down the highway for approaching eastbound traffic. This time, he saw some cars approaching, so he drove the tractor-mower down the shoulder of the highway until those cars passed. Brown stated that he looked back down the highway again and moved the tractor-mower from the shoulder onto the outside or right-hand eastbound lane of traffic. When Brown looked back this time before moving the tractor-mower from the shoulder, he saw two concrete trucks approaching eastbound, so he stayed in the outside lane after pulling into it until they passed.

After those two trucks passed, Brown stated that he again stood up, leaned out from the tractor-mower to his left with his right hand on the wheel and his left elbow on the tractor's fender and looked back down the roadway for approaching eastbound vehicles. When he did so, he said that he was able to see back up the hill and along the curve of the highway. That was a distance of three-tenths of a mile. He stated that there were no eastbound vehicles in view at that time. The speed of the tractor-mower was between 5 and 15 m.p.h. By this time, the tractor-mower had reached a point on the outside, eastbound lane of the highway near the easternmost edge of the first median opening. Brown testified that he then moved the tractor-mower from the outside lane to the inside, eastbound without incident.

After changing lanes, Brown stated that the tractor-mower had traveled 77 feet in the inside, eastbound lane and that he heard tires squealing behind him. When Brown heard tires begin to squeal behind him, the tractor-mower was entirely in the inside, eastbound lane according to both Brown and a witness named David McKarnin. Hearing the tires squealing, Brown testified that he accelerated as hard as he could, drove east down the inside lane another 62 feet and turned into the second median opening before West–Gibson's car struck the side of the tractor-mower's left rear tire.

In addition to the distance measurements set out above, Brown also measured the distance from the nose of the tractor-mower where it was stopped on the shoulder of the highway to the point of impact. That measurement was 389.3 feet. Also, the distance from the point on the roadway where Brown stood, turned and looked behind him before changing from the right-hand to the left-hand eastbound lane to the point of impact was 139 feet.

West–Gibson testified that as she came around the curve and began going downhill on the two-lane portion of the highway, she checked her speed and braked to bring it down to 55 m.p.h. The only other testimony of her braking was her braking after she realized her car was going to collide with the tractor-mower. West–Gibson was in a three-way conversation with Patti Courtney and the other passenger in the car as she drove downhill around the curve and onto the divided, four-lane stretch of highway. She testified that she saw the tractor-mower in the right-hand, eastbound lane of the divided highway when she was still back on the undivided portion of the highway. Her car entered the inside or left-hand eastbound lane when the highway widened into a divided, four-lane highway and it stayed in that lane.

West–Gibson testified repeatedly that the front end of the tractor-mower abruptly crossed the lane line from the right-hand

lane right in front of her car, she did not know where on the roadway the tractor-mower was when it began the lane change.

West–Gibson testified that all she had time to do to avoid the collision was apply her brakes. She did not honk her horn or attempt to swerve into the outside, or right-hand, eastbound lane, even though there were no other cars there. According to the police officer who investigated the accident, the rear wheels of West–Gibson's car left 100 feet of actual skid marks. From the length of those skid marks, Officer Orth computed that the skid alone reduced the car's speed by 45.8 m.p.h., with the impact absorbing the rest of the car's speed. At the scene, West–Gibson had told Officer Orth her car's speed had been between 40 and 50 m.p.h.

The front of West–Gibson's car, from its center to the right or passenger side of the front, hit the left-hand rear tire of the tractor-mower. The damage to the front end of the car was extensive. The force of the impact was such that Patti Courtney's head struck the windshield and her right knee struck the dash causing her to suffer a compression fracture of the tibial plateau.

Brown was cited for and pleaded guilty to a municipal violation of failing to yield the right-of-way when changing lanes. This evidence was also presented to the jury. The jury entered its verdict assessing 100% of the fault to West–Gibson.

■ The first two points raised on appeal by Brown and the City of Kansas City contend that the trial court erred in granting a new trial on the ground that the verdict was against the weight of the evidence. We disagree. Section 510.330, RSMo 1986, states in pertinent part that "[a] new trial may be granted for any of the reasons which new trials have heretofore been granted.... Only one new trial shall be allowed on the ground that the verdict is against the weight of the evidence." Similarly, Rule 78.02 provides that "[o]nly one new trial shall be allowed on the ground that the verdict is against the weight of the evidence." The trial court has great discretion in ordering its one new

trial on the ground that the verdict is against the weight of the evidence. *Ogden v. Toth*, 542 S.W.2d 17, 24 (Mo.App.1976). In Missouri, there is a long-standing precedent that the appellate court will affirm the trial court's grant of a motion for new trial unless "there is a manifest abuse of discretion by the trial court." *Gentry by Gentry v. Douglas*, 744 S.W.2d 788, 789 (Mo. banc 1988); *Clark v. Ford*, 498 S.W.2d 803, 805 (Mo.1973); *Burnett v. St. Louis Public Service Co.*, 337 S.W.2d 921, 923 (Mo.1960). The standard of review to be applied by the appellate court is limited to "a determination of whether there is substantial evidence sufficient to support a verdict in the moving party's favor." *Gentry by Gentry*, 744 S.W.2d at 789.

■ In the case at bar, there was evidence that Brown did not signal before changing lanes, operated the tractor-mower in a known dangerous condition, and made an admission against interest by pleading guilty to a ticket which he received from this accident for failing to yield the right-of-way. This evidence indicates that the City and Brown were negligent and should be held liable for some portion of the damages to the Courtneys. Additionally, evidence presented shows that West–Gibson's car hit the tractor at an angle which would indicate that the tractor made an abrupt left turn and cut into the lane and in front of West–Gibson's car. The angle indicates that the tractor was almost perpendicular to the front of the car and the car tire hit the tire and hub of the left rear wheel of the tractor-mower. The location of the impact and damage to both vehicles also indicate that the City and Brown were negligent and sould be liable for a portion of the Courtneys' damages.

■ In the granting of a new trial, if the trial court bases its decision on substantial evidence and the verdict was against the weight of the substantial evidence, then the granting of a new trial is not an abuse of discretion. *Gilomen v. Southwest Missouri Truck Center, Inc.*, 737 S.W.2d 499, 502 (Mo.App.1987). The evidence indicating negligence on the part of Brown, and the location of the damage to the car and

tractor-mower was substantial evidence upon which the trial court weighed in ordering a new trial.

Brown also contends that the Courtneys were not prejudiced by the jury's verdict and therefore a new trial should not have been granted. We disagree. In the cases cited by Brown as supporting this contention, the trial court set aside the verdict and granted a new trial on the ground that an error had been committed during the course of the trial. *See McDonald v. Heinemann,* 141 S.W.2d 177, 181 (Mo.App. 1940); *see also State ex rel. Missouri Mutual Association v. Allen,* 336 Mo. 352, 78 S.W.2d 862, 865 (1934).

In the case at bar, the sole reason given by the trial court for setting aside the verdict and granting a new trial was that the verdict was against the weight of the evidence. There is no claim that an error was committed during the course of the trial. Therefore, Brown's cited cases are inapplicable. We find no abuse of discretion by the trial court in granting a new trial on the grounds that the verdict was against the weight of the evidence. Therefore, the first and second points are denied.

█ The third point raised on appeal is that the trial court erred in not specifying that the new trial was only to be on the issue of liability. We disagree. The trial court's order granting a new trial was based on Paragraph I of the Courtneys' motion and Paragraph IX of West–Gibson's motion. The last sentence of Paragraph I states that "[b]ecause of the jury's complete disregard of incontestable facts, the new trial should be on both liability and damages." Paragraph IX only asserted negligence, and therefore could be read to only seek a new trial on damages. The trial court's order is therefore an inconsistent order. The broader general relief of a new trial on both liability and damages must prevail over the more limited one of only damages. *See e.g. Hewitt v. Chicago, Burlington & Quincy Railroad Company,* 426 S.W.2d 27, 29 (Mo.1968).

█ The appellate court has the power to affirm the trial court's order and remand with further instructions. *See Green v.*

*NLT Computer Services Corp.,* 649 S.W.2d 475, 479 (Mo.App.1983). Where there is conflicting evidence on liability, a new trial on all issues is desirable. *Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App.1986). It has been held that in comparative fault cases there is an interrelationship between fault and damages apparent on the face of the instructions. *Id.* The issues of liability and damages are so interwoven and blended that "it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of damages to be eventually awarded to the plaintiff." *Id.*

Therefore, the Order granting a new trial is affirmed. This case is remanded with instructions that the issues of liability and damages are to be retried.

All concur.