James BROWN, Appellant,

v.

Stephen L. KING, Respondent.

No. WD 43120.

Missouri Court of Appeals,
Western District.

Feb. 5, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1991.

Application to Transfer Denied
May 3, 1991.

Michael W. Manners, Independence, for appellant.

Theodore J. Furry, Kansas City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

BERREY, Presiding Judge.

Appellant, James Brown, sustained injuries when respondent, Stephen King, drove his car into the rear of a pickup truck and the truck was driven into appellant's body. The jury found the appellant 90% at fault and the respondent 10% at fault. From this the appellant appeals.

On September 18, 1986, appellant was a passenger in a pickup truck northbound on Southwest Trafficway being operated by his girl friend, Jennifer Hamilton. The roadway is four lanes wide and uphill. As the pickup approached Southwest Trafficway at approximately 20th Street in Kansas City, Missouri,[1] the hood of the pickup came loose. The safety catch prevented it from flying all the way up. At the time, Hamilton was driving her 1976 pickup in the extreme left hand lane. Traffic to her right prevented her from pulling over and off on the right shoulder. Instead she pulled up so close to the left hand medium barrier she could not open her door. Appellant exited the truck and went to the front to secure the hood. As he completed

this task, a 1984 Chevrolet Camero struck the pickup in the rear and caused it to strike appellant.

Respondent testified his speed was 50 to 55 miles an hour and that he was following a van. The respondent estimated 150 feet separated the van from the pickup. He estimated five or six car lengths were between his car and the van when the van swerved right. There was testimony that a car length is 17–18 feet. Hence, some 230 feet separated the Camero from the pickup when the van swerved to the right.

Robert E. McKinney, Sr., an accident reconstructionist, testified that he has been an accident investigator and reconstructionist since 1960. He was employed by the Kansas City Police Department for almost thirty years and for eighteen of those years he was in traffic, and in accident investigation for twelve or thirteen years. He retired as a captain.

McKinney testified there was an uphill grade of 6.11% and defendant left 61 feet of skid. McKinney also noted that at 50 miles per hour a car travels 73.5 feet per second and 80.85 feet per second at 55 miles per hour. Normal reaction time is ¾ of a second. Traveling at 50 miles per hour, factoring in reaction time, a driver would travel 55 feet before he reacted. At 55 miles per hour reaction time increases to 60.5 feet. The approximate breaking distance once the brakes were applied would be 131.15 feet. Adding the 60.5 feet of reaction time for a vehicle traveling 55 miles per hour a total of 191.65 feet is required for stopping. At 50 miles per hour the total stopping distance would be 163.39 feet. Given the distances mentioned herein if defendant was operating his vehicle at 50 or 55 miles per hour he could have stopped in about 170 feet, or 191.65 feet which is short of the 230 feet that existed between defendant's car and the pickup when defendant first became aware of his situation.

Appellant sustained severe injuries in this accident. He does not remember what happened to him or how he got to the

1. Because Southwest Trafficway goes over 20th, there is no intersection, as such.

hospital. He had a bad headache and was hurting all over. Following his arrival at the emergency room he spent four days in the hospital. He was given a CAT scan and his chest was x-rayed. His right arm was numb. When he tried to get up and move around he would black out. On discharge he was given medication and instructed to use a T.E.N. unit to "kill the pain inside." He wore this unit for four months or more. At the time of trial he still complained of loss of memory, dizziness, loss of taste and smell and chest pains. Fast movement exacerbates this complaint. He also suffers from loss of appetite and sleep.

Brown testified he had a high school education at the time of the accident and was employed by Wabash Iron and Metal. He was an unskilled laborer unloading trucks and cutting aluminum. He was paid $4.25 per hour and worked forty to forty-five hours per week. He was off work eight or nine months following the accident. He returned to work but was physically unable to perform the duties. When sawing through airplanes and boats the first week back he had no complaints. Later his arm started "getting real heavy." Brown would take frequent rest breaks. About his second or third week back he was cutting and dropped the saw to the ground. He left Wabash Iron and Metal because, "if I go back there it might happen again and I might just fall down on something or a machine."

Appellant, in Point I, claims that the trial court erred in failing to instruct the jury on the issue of excessive speed. We reverse and remand for a new trial.

Respondent's testimony establishes that he was five or six car lengths behind the van when it swerved and that the van was 150 feet behind the pickup truck at that point for a total of 230 feet using the most favorable estimate. Expert testimony established that braking distance plus reaction time at 55 miles per hour is 191.65 feet. In other words, there was ample space for respondent to stop under the conditions he testified to. Since respondent did not stop in time to avoid an accident, it can be reasonably inferred that the distance at which respondent was following the van was less than testified to or that the respondent was traveling in excess of 55 miles per hour.

Appellant offered Instruction B which included speed as an alternative submission. This instruction provided:

In your verdict you must assess a percentage of fault to Defendant, whether or not Plaintiff was partly at fault, if you believe:

First, either:

Defendant failed to keep a careful lookout, or

Defendant drove at an excessive speed, or

Defendant was following the large van-like truck too closely, and

Second,

Defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third,

Such negligence directly caused, or directly contributed to cause, damage to Plaintiff.

The trial court refused this instruction.

In determining whether an instruction should have been given, the evidence is viewed in a light most favorable to the party offering that instruction giving that party the benefit of all inferences favorable to the instruction and ignoring all contrary evidence. *Edgewater Health Care, Inc. v. Health Systems Management, Inc.*, 752 S.W.2d 860, 868 (Mo.App. 1988). A plaintiff is entitled to take advantage of a defendant's admissions and concessions during the course of the trial and to use all favorable evidence, including the defendant's evidence, in instructing the jury. *S.P. Personnel Assoc. of San Antonio, Inc. v. Hospital Building & Equipment Co.*, 525 S.W.2d 345, 350 (Mo.App. 1975). Failure to submit an instruction to which a party is entitled is reversible error where the merits of the action are materially affected. *Allison v. Sverdrup & Parcel & Assoc., Inc.*, 738 S.W.2d 440, 454 (Mo. App.1987).

In the instant case, failure to submit an instruction as to excessive speed was error which materially affected the jury deliberation. The evidence established that there was a jury issue as to the question of speed. We therefore reverse and remand for retrial.

 Retrial is ordered on all issues, not just the question of liability as prayed for by appellant. In the instant case liability and damages are inextricably entwined. Where there exists conflicting evidence as to liability, a new trial on all issues is desirable. *Phillips v. Lively*, 708 S.W.2d 369, 373 (Mo.App.1986). "[I]t would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of damages to be eventually awarded to the plaintiff." *Id.*

The judgment of the trial court is reversed and the cause is remanded for a new trial.

All concur.