**Leslie Glen BARLETT, an Incompetent, By and Through his Guardian and Conservator, Sandra BARLETT, Plaintiff–Respondent,**

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, a Missouri Corporation, Defendant–Appellant.**

No. 75465.

Supreme Court of Missouri, En Banc.

May 25, 1993.

Rehearing Denied June 29, 1993.

movant was challenging the sentence in the

29.15 motion.

Daniel E. Scott, Lloyd R. Buehner, Jr., Lloyd R. Buehner, III, Joplin, for defendant-appellant.

Glenn R. Gulick, Jr., Joplin, for plaintiff-respondent.

BENTON, Judge.

Kansas City Southern Railway Company ("the Railroad") appeals from a judgment of $1.5 million for Leslie Glen Barlett. After opinion by the Court of Appeals, Southern District, this Court granted transfer. *Rule 83.03.* The judgment is reversed; the case is remanded for a new trial.

## I.

On September 5, 1987, the Railroad's train—consisting of three engines and 110 cars stretching over 6,000 feet—was passing through Joplin, heading to Kansas City. At about 2:10 a.m., while on tracks owned by the Railroad, the train collided with a car driven by Barlett near the intersection of 20th Street and Michigan Avenue. Barlett sustained serious injuries.

In October 1987, the original petition was filed. Later, the probate division of the circuit court found Barlett incompetent, and appointed his mother as conservator of his estate. The petition was amended accordingly.

During the eleven-day trial in April and May 1991, the parties disagreed about practically every fact, except that the accident did occur and that Barlett suffered some injury. The jury returned a $6 million verdict, allocating 25% of the fault to the Railroad and 75% to Barlett.

On appeal, the Railroad raises ten points. Four concern the submissibility of parts of Barlett's verdict director. Three deal with Barlett's closing argument. The remaining three address other issues.

## II. Barlett's Verdict Director

The verdict director offered by Barlett on the Railroad's liability submitted four alternative claims of negligence in the disjunctive: 1) the Railroad "operated the train at an excessive speed"; 2) the Railroad failed to sound an adequate and timely warning; 3) the Railroad failed to maintain the right-of-way clear of vegetation; and 4) the "flashing lights" were not operating, and the Railroad failed to stop or slow down. The Railroad claims there was insufficient evidence on all these submissions except the second, failure to sound a warning. The Railroad also asserts federal preemption.

### A. Preemption

The Railroad claims that the common law claim of excessive speed is preempted by federal law, citing *45 U.S.C. § 434,* and *49 C.F.R. § 213.9.*

■ The United States Supreme Court recently ruled that, while some state claims based on dangerous conditions at crossings are allowed, federal law preempts state common law claims based on excessive speed. *CSX Transportation, Inc., v. Easterwood,* — U.S. ——, ——–——, 113 S.Ct. 1732, 1738–44, 123 L.Ed.2d 387 (1993). Thus, while a railroad may be liable for failure to remedy unsafe conditions, it may not be liable for traveling at an unsafe speed in areas with such conditions.

To the extent that Barlett's allegation is that the Railroad had a common law duty not to speed, he fails to state a claim. While the parties dispute whether this point was preserved at trial, this dispute is irrelevant because failure to state a claim can be raised for the first time on appeal. *Rule 55.27(g)(2).*

### B. Submissibility

■ The Railroad argues that there was insufficient evidence to support the submissibility of the claims based on: 1) vegetation; 2) the failure of the flashing lights; and 3) the excessive speed. In reviewing submissibility, this Court takes the evidence in the light most favorable to the party submitting the instruction, and makes all reasonable inferences in support of that party. *Oldaker v. Peters,* 817 S.W.2d 245, 251–52 (Mo. banc 1991); *Delisi v. St. Luke's Episcopal—Presbyterian Hospital, Inc.,* 701 S.W.2d 170, 173 (Mo. App.1985).

### 1. Vegetation

■ The Railroad argues that the evidence was insufficient to demonstrate that the vegetation—a line of trees parallel to the track—obstructed the view of plaintiff Barlett. The evidence is clearly sufficient. Photographs demonstrated that a driver will not see a train approaching the crossing until the driver passes the line of trees. The driver of the car behind Barlett testified that her view was obstructed. The Railroad engineer testified that he could not see Barlett's car until it passed the trees. From these facts, a jury could reasonably infer that the vegetation obstructed Barlett's vision.

The Railroad also argues that the instruction was contrary to Barlett's trial theory. While at times Barlett focused on the engineer's point-of-view, this focus was not exclusive. The verdict director on vegetation was not inconsistent with Barlett's trial theory. In addition, the Railroad did not raise this objection in its motion for new trial or at trial. Therefore, it is not preserved for review. *Rule 70.03.*

### 2. Flashing Lights

■ The Railroad contends that the evidence was insufficient to show its knowledge that the lights were not working, or to prove causation. Several witnesses testified that they neither saw the lights flashing nor heard the bells ringing. Extensive testimony demonstrated that the train crew had a duty to be on the lookout for the lights, or that the crew actually did look at the lights. From this testimony, the jury could have believed that the lights were not flashing, and that the crew knew or should have known this fact.

■ In arguing causation, the Railroad misinterprets the theory behind this submission. The flashing lights are intended to warn drivers that a train is coming. If the lights are not working, then the train has a duty to provide that warning by alternate means, such as lowering its speed so drivers see the train for a longer period of time before the train blocks the entire crossing. As such, the failure to "slacken the speed" contributed to cause the collision.

The decision in *Easterwood* does not clearly prohibit this submission. Where a specific, individual hazard exists, a train has a duty to slow down or stop. *See Easterwood,* — U.S. at — n. 15, 113 S.Ct. at 1743 n. 15. *Easterwood* does not directly address whether this duty is preempted. *Id.*

The evidence was sufficient to support submission of the failure of the flashing lights.

### 3. Excessive Speed

The *Easterwood* decision holds that federal law and regulations preempt a common law claim of excessive train speed, which is defined as "traveling too quickly given the 'time and place.'" *Easterwood*, —— U.S. at —— n. 15, 113 S.Ct. at 1743 n. 15. *Easterwood* did not address whether federal law preempts local speed limits. At trial, the evidence indicated that the train was violating the speed limit of 25 m.p.h. established by a Joplin ordinance. While the Railroad contests the validity of this ordinance, this Court does not need to decide its validity because the evidence does not support causation under any theory.

■ The first potential theory of causation put forth by Barlett in this trial was the "mere location" rule. The mere location rule would permit finding causation from evidence that the train's speed at a "remote" point in time "caused" the train to be at the scene of the accident. *See Mullis v. Thompson*, 358 Mo. 230, 213 S.W.2d 941, 947 (1948).

The mere location rule does not apply to other types of accidents (car and boat), where evidence of speed is only relevant to show the speed immediately before the collision. *Hewitt v. City of Kansas City*, 761 S.W.2d 679, 680 (Mo.App.1988). This case demonstrates why traditional causation is the better rule. The collision occurred at a relatively busy intersection. In fact, another car was immediately behind Barlett. Thus, if the train had been going slower at a remote point in time, it might well have missed Barlett, but hit the next car.

The mere location rule also violates common sense, leaving causation "open-ended." The mere location rule theoretically allows evidence of train speed over an infinite number of prior runs. While speed at a remote point in time may be a "philosophical" cause of a collision, it cannot be a "legal" cause. The mere location rule cannot be the basis for submitting a claim of violating the speed limit in this, or any future, case.

■ Alternatively, Barlett contends that causation could be proved under the traditional theory of causation. At the ordinance speed limit of 25 m.p.h., a train would block the entire intersection in less than a second after the time it passed the end of the tree line. Thus, if the train were going the speed limit, a driver would have inadequate warning time to avoid an accident. Likewise, no evidence showed that a train could have stopped at that speed in time to avoid this collision. Thus, under the facts of this case, even though a violation of the Joplin speed limit could be shown, it would be impossible to prove causation.

### III. Arguments

The Railroad claims the trial court erred by allowing three specific statements in closing argument. Because the Railroad did not object to the third statement—that the Railroad could have had a psychologist examine Barlett—the claimed error on that statement was not preserved for appeal. *Cf. Rule 78.08; Rule 84.13.*

■ Of the remaining two statements, one concerned the submission on vegetation. In this argument, Barlett's attorney stated that the Railroad had to keep the right-of-way clear for as much as it owned. The Railroad objects that this misstated the law. This objection can be construed in one of two ways: either that the argument misstated the actual law, or that the argument misstated the instructions. This distinction is important because Barlett's argument was more favorable to the Railroad than the instruction, which did not expressly limit the Railroad's duty to land that it owned. The Railroad did not preserve this "error" as to the instruction, and thus waives any claim that the law as stated in the instruction was inaccurate. Construing the argument in the light most favorable to the Railroad, Barlett's attorney might have been contradicting the instruction, so that the trial court might have erred. *Cf. Heshion Motors, Inc., v. Western International Hotels*, 600 S.W.2d 526, 533–34 (Mo.App. 1980) (courts have absolute duty to exclude misstatements of the law during closing argument). There could not, however, be any prejudice from this alleged error be-

cause the argument limited rather than expanded the Railroad's duty as compared to the instruction.

■ Finally, the Railroad objects to Barlett's argument that the Railroad had requested to have its own doctor examine Barlett. The precise objection at trial was to a statement that the Railroad had filed a motion requesting permission to examine Barlett. On appeal, the Railroad interprets this statement as arguing that the Railroad had an absolute right to such an examination. Barlett counters that this statement was proper "retaliation" to the Railroad's argument that Barlett's attorney influenced a physician to alter his conclusions about Barlett's condition. Allowing such retaliation is within the discretion of the trial court, especially when the argument is factually accurate. *Lewis v. Bucyrus—Erie, Inc.*, 622 S.W.2d 920, 926 (Mo. banc 1981). The trial court did not err in allowing this argument.

### IV. Other Issues

The Railroad raises three additional complaints. First, the Railroad claims that, because the trial judge also presided over probate proceedings on Barlett's competency, he should have recused himself from this case. Second, the Railroad complains about the exclusion of its evidence clarifying the facts of an accident at the intersection some three weeks before this collision. Third, the Railroad alleges that the damages in this case were excessive and biased due to the alleged trial errors.

### A. Recusal

■ The Railroad contends that the trial judge should have recused from this case. While the potential for a conflict was noted by the Railroad immediately before trial, this issue was not formally raised until the motion for new trial. Thus, the question is solely whether the trial judge had the absolute duty to remove himself on his own initiative.

The Railroad's complaint is that the trial judge, as fact-finder in the probate division, made rulings about the extent of Barlett's injuries, and Barlett's attorneys used this

fact in argument to bolster his claim for damages. The Railroad does not allege that these arguments were improper. Instead, the Railroad limits itself to claiming that the potential for such arguments required recusal.

As authority, the Railroad cites Rule 2—the Code of Judicial Conduct—and in particular Canon 3 C(1) which gives particular instances requiring recusal. Two provisions relate to this case. First, the Canon provided at the time of trial that a judge must recuse if "he has personal knowledge of disputed evidentiary facts." *Canon 3 C(1)(a)* (1991). The Canon also requires recusal when the judge is a "material witness." *Canon 3 C(1)(b)*. In addition to these provisions, the Railroad cites the general catchall clause of the Canon, which states: "A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned." *Canon 3 C(1)*.

A judge who presides in two proceedings with the same party and same fact should consider the requirements of Canon 3 C(1). It is clear that a judge does not become a "material witness" or "gain personal knowledge of disputed evidentiary facts" by merely presiding over a related proceeding. *Logan v. State*, 712 S.W.2d 9, 10–11 (Mo.App.1986). While the two specific provisions of Canon 3 C(1) are thus not implicated, the catchall requirement—avoiding the appearance of impropriety—could be at issue. Four possible combinations of judicial participation can result from conducting two related proceedings. First, a judge may preside over both proceedings with a jury as primary fact-finder. Barring unusual circumstances, no one would seriously argue for automatic recusal due to the appearance.

Second, a judge may have presided over the first proceeding but have primary fact-finding responsibility in the second case. This situation does not require automatic recusal. *In the Interest of C.L.L.*, 776 S.W.2d 476, 477 (Mo.App.1989). The judgment in the first case could be placed before any fact-finder in the second case. *Id.*

Third, a judge may have primary fact-finding responsibilities in both proceedings. For example, a judge may preside over both a plea hearing and a motion for post-conviction relief. *Logan,* 712 S.W.2d at 11.

Fourth, as in this case, a judge may have primary fact-finding responsibilities in the first proceeding, but not in the second. Again, this circumstance does not by itself compel recusal. *State v. Christeson,* 780 S.W.2d 119, 121–22 (Mo.App.1989).

The underlying rationale is best expressed by a case cited by the Railroad, *State v. Lovelady,* 691 S.W.2d 364, 367–68 (Mo.App.1985). A judge "cannot avoid forming and giving expression to tentative opinions upon issues" raised during pretrial proceedings. *Id.* at 367. Judges should treat such opinions as tentative, placing them to the side in making rulings during the actual trial. *Id.* If those rulings indicate a firm bias, then recusal is mandatory. *Id.* at 368.

In the present case, the probate proceeding apparently rose out of the civil proceeding. Regardless who presided over the actual trial, the judicial finding of incompetency could have been used to bolster Barlett's claim of damages. No evidence in this record resembles the evidence in *Lovelady* that compelled recusal.

Other Missouri cases cited by the Railroad are equally inapplicable. In *Grant v. State,* 700 S.W.2d 170, 171 (Mo.App.1985), the judge had previously represented Grant, making recusal mandatory. *Canon 3 C(1)(b); see also State ex rel. Division of Family Services v. Oatsvall,* 612 S.W.2d 447, 452–53 (Mo.App.1981). The last Missouri case cited by the Railroad involved the judge's failure to comply with the rules for remittal of recusal. *Ham v. Wenneker,* 609 S.W.2d 240 (Mo.App.1980).

In summary, Missouri law does not require recusal merely from a judge's involvement as a judge in other proceedings involving the same party and issue. Such an involvement does not necessarily raise an appearance of impropriety. Before recusal is mandatory, additional facts must demonstrate that the judge is no longer capable of impartiality in the present case. Such facts are not present in this case.

### B. Exclusion of Evidence about Prior Accident

The Railroad complains about limitations on its redirect examination of a witness about knowledge of a prior accident at this intersection.

Three weeks before the collision in this case, the Railroad was involved in another accident at the same intersection. Both parties called the Railroad's agent who investigated both incidents. During direct examination in plaintiff's case, Barlett's attorney established that the witness did not go to Joplin to investigate the first collision until after Barlett's accident.

The Railroad alleges that Barlett's later cross-examination (during the Railroad's case) raised an inference that this prior accident was caused by the vegetation. If this inference were raised, it comes from two questions probing whether any order to cut the vegetation was given between the two accidents. The witness responded to these questions that he had no knowledge before Barlett's collision that vegetation was a problem at this intersection.

Pursuing these questions, the Railroad sought to offer evidence that this prior collision did not involve vegetation. The trial judge excluded this evidence, raising two issues: 1) was the evidence admissible as a result of Barlett's "opening the door"; and 2) did the trial court have discretion to exclude this evidence.

■ Generally, evidence otherwise inadmissible *may* be admitted to rebut a negative inference raised by incomplete evidence of a transaction. *Wilson v. Shanks,* 785 S.W.2d 282, 285–86 (Mo. banc 1990). It is arguable whether the evidence in this case created a negative inference. None of the questions explicitly indicated that the earlier accident involved vegetation, and the witness's testimony was that he had received no information that vegetation was a problem.

In any case, a trial court has discretion in admitting curative evidence. *Gevermuehle v. Geimer,* 619 S.W.2d 320, 322 (Mo.App. 1981). The Railroad sought to introduce

hearsay evidence of the circumstances of the prior accident. The trial court, within its discretion, foreclosed what could have been a substantial detour into a collateral issue. *See Jones v. Terminal Railroad Association,* 242 S.W.2d 473, 477 (Mo. 1951). If the Railroad had limited itself to clarifying, by one or two pointed questions, that the first accident did not involve the issue of vegetation, the trial court might have ruled differently. The extensive offer of proof, however, indicated a desire to explore the details of that collision.

Finally, even if the trial court had abused its discretion, no prejudice resulted. The evidence on the extent of vegetation was clear, solid, and overwhelming. This claim of error is without merit.

### C. Damages

The Railroad claims that there was insufficient evidence supporting the damages awarded, and that the jury was prejudiced by the other alleged trial errors. A finding of liability is a prerequisite to a finding of damages. Especially in a comparative fault case, a determination of damages cannot survive independent of the accompanying determination of liability. Because the finding on liability is reversed, the finding on damages must also be reversed.[1]

### V.

The judgment is reversed; the case is remanded for a new trial.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, THOMAS and LIMBAUGH, JJ., and GAERTNER (CARL), Special Judge, concur.

PRICE, J., not sitting.

---

**1.** Since the adoption of comparative fault, the cases have disagreed about the relationship between damages and liability. 1) Damages are independent of liability; a new trial on damages will not be ordered due to a new trial on liability. *See, e.g., Havel v. Diebler,* 836 S.W.2d 501, 505 (Mo.App.1992). 2) The aggrieved party may choose either a new trial on only liability or a new trial on all issues. *See Kramer v. Chase Resorts, Inc.,* 777 S.W.2d 647, 653 (Mo.App. 1989). 3) Damages depend on liability; a new trial should be held on all issues when a new trial on liability is required. *See, e.g., Brown v. King,* 806 S.W.2d 436, 439 (Mo.App.1991); *Courtney v. City of Kansas City,* 775 S.W.2d 269, 273 (Mo.App.1989). Cases contrary to this opinion should no longer be followed.