**Robert L. MOTT, et ux, Respondents,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Appellant.**

**Robert L. MOTT, et ux, Appellants,**

v.

**MISSOURI PACIFIC RAILROAD CO., Respondent.**

**Nos. WD 50647, WD 50664.**

Missouri Court of Appeals,
Western District.

May 7, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 1996.

Application to Transfer Denied
Aug. 20, 1996.

---

G. Spencer Miller, Daniel Robert DeFoe, Miller, Dougherty & Modin, Kansas City, for Robert L. Mott, et ux.

Richard L. Martin, Martin, Leigh & Laws, P.C., Kansas City, for Missouri Pacific Railroad Company.

Before: FENNER, C.J., P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

Defendant–Appellant Missouri Pacific Railroad Company appeals from a judgment against it in a negligence action initiated by plaintiffs Robert L. Mott and Dorleen Mott for personal injuries sustained by Mr. Mott and for Mrs. Mott's loss of consortium. The negligence suit was based upon a railroad crossing accident between one of Missouri Pacific's trains and a gasoline tanker truck driven by Mott.

Mott worked for MFA as a bulk plant manager. On August 8, 1985, Mott drove an MFA 1,500 gallon gasoline delivery truck onto Missouri Pacific's tracks in the city of Harrisonville, Cass County, where it was struck by a southbound train. Mott was ejected from the truck and caught in a barbed wire fence. He sustained multiple serious injuries. Mott was in the hospital for approximately two months and then was cared for at home. He returned to work a year later, but according to Mrs. Mott was not the same mentally or physically after the accident.

The following verdict director was submitted to the jury:

In your verdict you must assess a percentage of fault to defendant Missouri Pacific Railroad whether or not plaintiff Robert Mott was partly at fault if you believe:

First, either:

defendant Missouri Pacific Railroad operated its train in excess of the speeds established by the railroad time table, or in excess of 30 mph as set forth in the Harrisonville city Ordinance, or

defendant Missouri Pacific Railroad failed to maintain its right-of-way so that it was reasonably clear of vegetation, undergrowth or other debris for a distance of two hundred fifty feet from the crossing; and

Second, defendant Missouri Pacific Railroad, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff Robert Mott.

Three different speed limits imposed on the Missouri Pacific train were put before the jury. First, federal regulations limit the speed on the class 4 tracks running through the intersection to 49 mph. Second, Missouri Pacific had a self-imposed book of operating rules called a timetable which limited the speed to 40 mph in a zone which ended 1.94 miles before the crossing. Third, a Harrisonville ordinance restricted trains to 30 mph while inside city limits.

The "speed tape" recorded on the train indicated that the train was possibly going more than 49 mph on the tracks leading to the place of the accident. The Motts' expert calculated the speed as exceeding 49 mph based upon stopping distances.

On the issue of unreasonable vegetation submission, § 389.660.3, RSMo. (1978), in effect at the time of the accident, required that crossings be kept "reasonably clear of vegetation, undergrowth or other debris for a distance of two hundred fifty feet each way from such crossings where such things would materially obscure approaching trains from the view of travelers on the highway." Some trial testimony indicated that the vegetation was "the contributing factor to sight distance obstruction."

On the issue of contributory negligence, § 304.030, RSMo. (1978) required that gasoline tankers, "upon approaching any railroad grade crossing, be brought to a full stop within fifty feet, but not less than ten feet, from the nearest rail ... and shall not proceed until due caution has been taken to ascertain that the course is clear." A Missouri Pacific worker testified that Mott's truck did not stop in front of the tracks, but skidded onto the rail and stopped, where it was hit. Mott could not remember anything about the accident.

The jury assessed the total damages in Mott's case at $650,000, with the railroad 33.3% at fault and Mott 66.6% at fault, leaving Mott with $216,666.67. Mrs. Mott's loss of consortium claim was assessed at $100,000 and reduced because of Mott's negligence to $33,333.33. Both sides appealed.

## THE RAILROAD'S APPEAL

### I. FEDERAL PREEMPTION

■ A. The Ordinance: Missouri Pacific's first argument is that the Harrisonville ordinance restricting train speed to 30 mph within the city was preempted by federal law. The Supreme Court of Missouri has noted that "[t]he United States Supreme Court recently ruled that ... federal law preempts state common law claims based on excessive speed." *Barlett v. Kansas City Southern Ry. Co.,* 854 S.W.2d 396, 399 (Mo. banc 1993)

(citing *CSX Transp., Inc., v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Missouri Pacific argues that the above verdict director was therefore invalid because it allowed the jury to assess a percentage of fault to Missouri Pacific upon a finding that "defendant Missouri Pacific Railroad operated its train ... in excess of 30 mph as set forth in the Harrisonville city ordinance."

This aspect of Missouri Pacific's argument fails because the allegation that Missouri Pacific violated the Harrisonville *ordinance,* a specific numerical speed limit, is not the same as a "state *common law* claim[ ] based on excessive speed." *Id.* (emphasis added). General claims of "excessive speed under the circumstances" are not equivalent to ordinance violation claims. Indeed, *Barlett* specifically notes that "*Easterwood* did not address whether federal law preempts local speed limits." 854 S.W.2d at 400.

The question remains whether the ordinance [1] is preempted by federal law. Missouri Pacific cites no Missouri law directly on point. The express preemption provision in the Federal Railroad Safety Act (FRSA), 45 U.S.C. § 421, et seq., reads in pertinent part as follows:

"A state may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A state may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce." 45 U.S.C. § 434.

The problem here is that this court has no facts before it upon which to apply the statute. Missouri Pacific believes that the ordinance is preempted as a matter of law, and offers no evidence beyond the ordinance itself. Even assuming, arguendo, that federal law covers the subject matter here, there was no evidence before the trial court on whether the Harrisonville ordinance deals with "an essentially local safety hazard." Missouri Pacific thus failed to prove preemption. This court will not rule that as a matter of law that the ordinance was preempted.

■ B. The timetable evidence: Missouri Pacific complains that the portion of the verdict director which allowed the jury to find Missouri Pacific negligent if it "operated its train in excess of the speeds established by the railroad time table," was improperly submitted because a railroad's self-imposed speed limits are preempted by federal maximum speed regulations. Here, Missouri Pacific set its own speed limit of 40 mph by its timetable in an area where the federally mandated speed limit was 49 mph.

Missouri Pacific is correct in asserting that this portion of the verdict director should not have been submitted. As outlined above, *Easterwood* abolished all commonlaw claims of negligent, excessive speed. Evidence of violating a self-imposed timetable "merely goes to the state common-law of negligence." *See Bowman v. Norfolk Southern Ry. Co.,* 832 F.Supp. 1014, 1017 (D.S.C.1993). Violation of a railroad's own self-imposed speed limit would only be relevant as evidence of due care in a negligence action for excessive speed outlawed by *Easterwood,* so any violation of the Missouri Pacific timetable should not have been submitted to the jury.

The Motts claim their references to the "timetable" were references to the federal speed regulations, and not references to Missouri Pacific's timetable railroad regulations. This argument is totally without merit. The difference between Missouri Pacific's timetable and the federal regulations was clear at trial and is clear here. It makes no difference that Missouri Pacific used the federal maximum speed regulations, at least where it

---

**1.** Note that § 79.420, RSMo. (1986), the state law authorizing the ordinance, has been repealed by L.1988, S/B. No. 676, § A. Now § 389.645, RSMo. (1994) controls, and states that "[t]he division [of transportation], upon application or complaint by a city, town or village, or upon its own motion, may ... govern the speed of railway engines...."

did not set speeds at a level lower than that allowed by federal law, to develop some portions of their timetable.

The railroad's alleged violation of a self-imposed speed limit should not have been submitted to the jury. The point is granted and leads to reversal and retrial.

## II. MERE LOCATION RULE

■ Missouri Pacific also alleges that evidence of the timetable speed violation improperly put the "mere location rule" before the jury. The mere location rule, abolished in *Barlett v. Kansas City Southern Ry. Co.*, 854 S.W.2d at 400, allowed a plaintiff to prove causation through evidence of the train's speed at a point remote from the accident. For example, under the mere location rule it could be shown that because a train was traveling too fast at any point before the intersection—two miles, five miles, or ten miles ahead of where the wreck occurred—the train and the car arrived at the intersection at the same time, whereas if the train had been traveling at the speed limit, it would have arrived at the intersection only after the car had crossed the tracks, and the collision would not have occurred. The rule was abolished because "while speed at a remote point in time may be a 'philosophical' cause of a collision, it cannot be a 'legal' cause." *Id.*

The evidence complained of here was evidence that Missouri Pacific violated its timetable speed[2] of 40 mph in a zone which ended (changed to the federally mandated limit of 49 mph) when all cars in the 3,563 foot train cleared a point 1.94 miles ahead of the intersection where the collision occurred. Over objection, the jury heard evidence that the train thus reached the intersection 5.27 seconds earlier than it would otherwise have. This evidence could have allowed the jury to conclude, impermissibly, under *Barlett*, that if the train had been going the speed limit, it would not have been at the intersection at the same point in time.

This evidence should never have been submitted. The only relevant evidence of speed

is "the speed immediately before the collision." *Id.* Upon retrial, any alleged violation of the federal speed guidelines or of the Harrisonville ordinance (if the trial court has evidence before it and decides that the ordinance is not preempted) is only relevant if it occurred in the area immediately before the collision. The point is granted.

## III. UNREASONABLE VEGETATION

■ This next issue is taken up since it will occur on retrial. Missouri Pacific claims that the issue of unreasonable vegetation could not be submitted to the jury because it was preempted by state law in that "the Missouri Department of Transportation has exercised jurisdiction and found that there was no vegetation problem."

The basis of the claimed exercise of jurisdiction is that on August 28, 1985, 20 days after the accident, a railroad specialist employed by the MDOT conducted an investigation and determined that there was no vegetation problem at the crossing. Missouri Pacific cites *Coon v. Atchison, Topeka, & Santa Fe*, 826 S.W.2d 66 (Mo.App.1992), for the proposition that "when the Public Service Commission (now Division) has assumed jurisdiction and made a determination of the necessary crossing protection at a given crossing ... a railroad cannot be held negligent for failing to deviate from the directive of the Commission (Division)." *Id.* at 70.

This case is easily distinguished by the fact that in *Coon*, the accident occurred after the jurisdiction was assumed. Here, the accident occurred before jurisdiction was allegedly assumed. Missouri Pacific does not show where in the record the MDOT entered any order concerning unreasonable vegetation prior to the August 8, 1985 accident. Further, the *Coon* case does not involve the vegetation statute applicable here, § 389.660(3)("It shall be the duty of every ... railroad ... to maintain the right-of-way ... so that it will be reasonably clear of vegetation...."). The point is denied.

2. Though this court held in I.B. that any alleged violation of the timetable speed should not be presented to the jury, the mere location rule problem addressed here could recur upon retrial with evidence of violations of speed limits other than the timetable.

■ In another point concerning unreasonable vegetation, Missouri Pacific argues that Instruction No. 5 was deficient where it allowed the jury to find negligence based upon Missouri Pacific's failure "to maintain its right of way so that it was reasonably clear of vegetation, undergrowth, or other debris for a distance of two hundred fifty feet from the crossing." Missouri Pacific argues that the verdict director should have traced the language of the statute, but did not include language requiring the jury to find that the vegetation obscured the train from Mott's view. The Motts respond that Missouri Pacific did not adequately preserve their objections.

Missouri Pacific is correct that the verdict director should include language requiring the jury to find not only that the crossing was not reasonably clear of vegetation, but also that the vegetation obscured the approaching train from Mott's view. See § 389.660(3) ("It shall be the duty of every ... railroad ... to maintain the right of way ... so that it will be reasonably clear of vegetation, undergrowth or other debris ... where such things would materially obscure approaching trains from the view of travelers on the highway."). "In cases involving a statutory violation, it is generally sufficient to frame an instruction substantially in the language of the statute unless the statutory language requires construction." *Vandergriff v. Missouri Pacific R.R.*, 769 S.W.2d 99, 104 (Mo. banc 1989). Because this court reverses on other grounds, we do not choose to find reversible error here, but note that the instruction could be made more clear on retrial.

In a somewhat baffling point, Missouri Pacific alleges that the issue of vegetation should not have been submitted to the jury because if Mott had been obeying § 304.030 to stop and look for a train, and continue looking until he could see up the track, the existence of vegetation would not have been the proximate cause of the accident.

Mott's negligence versus the railroad's negligence was a matter for the jury under Missouri's comparative fault law. The point is denied.

## THE MOTTS' CROSS–APPEAL

In a single point on cross-appeal, the Motts argue that the trial court erred in submitting Instruction No. 7 on the percentage of fault of Robert Mott. The point is addressed since it will come up at trial. The instruction, based upon MAI 32.01(2)(1991 Revision) reads as follows:

In your verdict you must assess a percentage of fault to plaintiff Robert Mott, whether or not defendant Missouri Pacific Railroad was partly at fault, if you believe:

FIRST, either:

plaintiff Robert Mott failed to heed the warning of the approaching train, or plaintiff Robert Mott failed to bring his gasoline delivery truck to a full stop within 50 feet, but not less than 10 feet, from the nearest rail of the railroad crossing and proceeded over the crossing without taking due caution that the course was clear; and

SECOND,

plaintiff Robert Mott, in one or more of the respects submitted in paragraph FIRST, was thereby negligent; and

THIRD,

such negligence directly caused or contributed to cause any damage plaintiff Robert Mott may have sustained.

The Motts claim that 1) the instruction does not track the language of § 304.030 and is therefore confusing and erroneous; 2) no substantial evidence supports the submission of paragraph FIRST; and 3) the instruction gave the jury a roving commission.

Turning to the first argument, § 304.030 states that "every motor vehicle used for the transportation of inflammable ... liquids ... shall, upon approaching any railroad grade crossing, be brought to a full stop within fifty feet, but not less than ten feet, from the nearest rail of such railroad grade crossing, and shall not proceed until due caution has been taken to ascertain that the coast is clear...."

■ The plaintiffs allege that the word "over" in the phrase "proceeded over the crossing" was superfluous and confusing because it is not in the statute. While the word

may have not been strictly necessary, there is no way that it confused the jury to the Motts' prejudice.

■ The second argument is that no substantial evidence supported "the proposition concerning warning or what plaintiff Bob Mott could have done in heed thereof." Without detailing all the evidence, it suffices to say that the head brakeman, the engineer, and a neighbor living near the scene all testified that the train signaled its approach by whistle and /or bell. Further, Mott admits in his interrogatory answers that his truck approached and drove through the intersection, slowing but not stopping. This argument is without merit.

Finally, the Motts contend that the submission of a general negligence instruction ("failed to heed the warning of the approaching train") resulted in giving the jury a roving commission to speculate on "other omissions" by Mott that kept him from avoiding the accident.

This final argument is a close case but does not reach the level of reversible error. However, because this problem may recur on retrial, it might be helpful to say that the verdict director would have been better had it allowed the jury to find a specific manner, based upon the evidence, in which Mott failed to heed the warning, i.e., "failed to stop," etc.. On retrial, the instruction should conform to the evidence.

\* \* \*

The remaining points need not be addressed. The judgment is hereby reversed and remanded for a new trial.

All concur.